COURT OF APPEALS OF VIRGINIA

Present: Judges Beales, Alston and Senior Judge Haley
Argued at Richmond, Virginia

ALICE C. TYLER VILLAGE
 FOR CHILDHELP

                MEMORANDUM OPINION[*] BY
v.   Record No. 0028-16-2      JUDGE ROSSIE D. ALSTON, JR.
                  JANUARY 17, 2017
CYNTHIA B. JONES, DIRECTOR,
 VIRGINIA DEPARTMENT OF
 MEDICAL ASSISTANCE SERVICES

FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Margaret P. Spencer, Judge

Albert W. Shay (Morgan, Lewis & Bockius, LLP, on briefs), for
appellant.

Usha Koduru, Assistant Attorney General (Mark R. Herring,
Attorney General; Cynthia V. Bailey, Deputy Attorney General;
Kim F. Piner, Senior Assistant Attorney General, on brief), for
appellee.

Alice C. Tyler Village for Childhelp (Childhelp) appeals the circuit court's decision to

affirm the opinion of Director Cynthia Jones of the Virginia Department of Medical Assistance

Services (DMAS) holding that DMAS overpaid Childhelp $1,173,264.06 in Medicaid funding.

Childhelp asserts four assignments of error:

> I.  Regarding Error Code 9004, for the Period of July 20, 2008
> through March 31, 2009 during which Childhelp used a
> revised treatment form, the decision of the Director is not
> supported by substantial evidence as it ignores the record
> evidence of Childhelp and the testimony of Childhelp's
> witnesses, which the hearing officer found to be persuasive.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

II.   Regarding Error Code 9008, for the period January 1, 2008 through July 19, 2008, the Director erred in not applying contract standards of law to determine whether any deficiency in Childhelp's documentation constituted a material breach of the provider agreement, and if it did, in not requiring DMAS to prove the amount of damages incurred by DMAS that arose from such breach.

III.   Regarding Error Code 9004, for the period of January 1, 2008 through July 19, 2008 the Director's determination that Childhelp failed to comply with the requirements of Manual Section B.1.b. by not furnishing twenty-one sessions of treatment interventions per week is not supported by substantial evidence and is error.

IV.   The Director erred under Code § 32.1-325.1(B) because she failed to adopt the hearing officer's recommended decision when such decision complied with applicable law and DMAS policy, and failed to provide due deference to the findings of fact made by the hearing officer.

We find that under the applicable standard of review that the Director erred under Code § 32.1-325.1(B) by failing to adopt the hearing officer's recommended disposition of the matter.[1]

Thus, the matter is reversed and remanded to be considered consistent with the factual findings of the hearing officer.

BACKGROUND

On March 21, 2002, Childhelp entered into an agreement with DMAS to receive Medicaid funding. Childhelp is a not-for-profit residential treatment center that provides services to abused, neglected, and at-risk children who suffer from severe mental, emotional, and behavioral disorders. DMAS is the agency in the Commonwealth responsible for administering

---

[1] Because we find consistent with Childhelp's fourth assignment of error, that the circuit court erred when it upheld the Director's decision disregarding the hearing officer's recommended decision, it is unnecessary for this Court to address the other assignments of error. See Luginbyhl v. Commonwealth, 48 Va. App. 58, 64, 628 S.E.2d 74, 77 (2006) ("[A]n appellate court decides cases 'on the best and narrowest ground available.'" (quoting Air Courier Conference v. Am. Postal Workers Union, 498 U.S. 517, 531 (1991) (Stevens, J., concurring))).

the Medicaid program. The agreement laid out what Childhelp was required to do to receive Medicaid funding, which included keeping "such records as DMAS determines necessary," and "furnishing DMAS, on request, information regarding payments claimed for providing services under the state plan." The agreement also included a provision stating: "the applicant agrees to comply with all applicable state and federal laws, as well as administrative policies and procedures of DMAS." These policies and procedures included the Psychiatric Services Provider Manual, provided by DMAS, which sets out how psychiatric facilities seeking Medicaid funding should be run.

On February 11, 2008, the accounting firm of Clifton Gunderson LLP, working for DMAS, conducted an audit of Childhelp's facility. After conducting the audit, JoAnn Hicks, an employee of Clifton Gunderson, wrote to Childhelp to discuss the deficiencies that she found among their patient records, including that the records did not provide the appropriate documentation to prove that their patients received the required twenty-one non-billable treatment sessions each week.

In July of 2008, Childhelp started using a revised form when documenting the twenty-one non-billable treatment sessions. This new form included a column for Childhelp's employees to note the plan for each patient's next treatment session.

On July 14, 2008, Childhelp provided Clifton Gunderson LLP with supporting documents to prove that they were in compliance with the agreement and the Psychiatric Services Provider Manual. Clifton Gunderson LLP reviewed the supplemental documentation, and wrote a letter on April 28, 2009 to notify Childhelp that there were no longer any deficiencies in their billing records.

In 2010, Clifton Gunderson LLP began another audit of Childhelp, reviewing medical records ranging from January 1, 2008 to March 31, 2009. On September 29, 2010, Hicks

informed Childhelp that there were two issues with their records, delineated as Error Code 9004 and 9008. Error Code 9004 represented that a provider had failed to properly document twenty-one non-billable treatment sessions per week for each patient. Error Code 9008 stood for the cases where a provider failed to provide sufficient progress notes to meet the documentation requirement. Because of these issues, Hicks stated that Childhelp had been overpaid $1,173,264.06 by DMAS.

On October 28, 2010, Childhelp filed an appeal of the audit, and on January 28, 2011 an internal fact finding conference was held. On March 30, 2011 an informal appeal decision was issued upholding a finding of overpayment by DMAS to Childhelp. Childhelp appealed the informal appeal decision on April 27, 2011, and on August 4, 2011 a hearing took place in front of Hearing Officer William S. Davidson.

Dr. Mark Horner, an employee of Childhelp, testified at the August 4, 2011 hearing. Dr. Horner stated that he reviewed DMAS's decision suggesting that Childhelp did not provide or adequately document the twenty-one non-billable weekly treatment sessions for each patient. Dr. Horner testified that the treatment form used by Childhelp adhered to the requirements of the Psychiatric Services Provider Manual Chapter IV(B)(2)(c), which states that to count toward the twenty-one non-billable treatment sessions, "progress notes for each session must describe how the activities of the session relate to the recipient-specific goals, the frequency and duration of the session, the level of participation in the treatment, the type of session (group, individual) and the plan for the next session." Dr. Horner stated that Childhelp abided by this provision because daily participation of the children is specifically documented, the type of session is listed on the form, and a variety of therapeutic sessions approved by the Psychiatric Services Manual were used. The sessions included "socialization skills, self-care skills like calming down, taking care of personal hygiene and transitioning into bed, which is critical for children who have either been

- 4 -

deprived or neglected." Additionally, there was a comprehensive plan of care for each patient that contextualized the interventions within the comprehensive treatment plan that licensed professionals developed to help children improve.

Dr. Deborah Mack, another employee of Childhelp, also testified at the hearing that she was aware of the requirement that each child receive twenty-one non-billable treatment sessions per week. According to Dr. Mack, the treatment sessions were documented in the initial plan of care near the end of each child's report. On a daily basis the childcare counselors monitored progress towards each child's goals; this was documented on the problem behavior list in the medical record. Dr. Mack looked at several different children's files and identified where the treatment sessions were located and how they were documented. From this information, she testified that each child had the opportunity to receive more than twenty-one treatment sessions during the weekdays. Dr. Mack stated that the treatment documentation form described the purpose of the treatment, the frequency and duration of the treatment session, what the patient's level of participation was, the types of session and where it was located, and what the facility had planned for each resident's next session.

Brooks Haas, Childhelp's resident manager, testified at the hearing that Childhelp provided many different types of sessions for their patients, from recreation, to hygiene and self-soothing. Each of these sessions catered to different behavioral issues. Haas testified about how different intervention techniques were used on the children to meet their needs and to help with their behavioral problems. He detailed what he included in each patient report, such as the child's level of participation, purpose of the treatment, how the child responded to treatment, and additional skills that counselors could envision their patients developing.

Hicks, a Senior Manager with Clifton Gunderson LLP, who helped perform audits on Childhelp, stated that the Psychiatric Services Provider Manual specifically stated what had to be

included in the documentation for each patient to meet the requirement of twenty-one non-billable treatment sessions. If twenty-one distinct sessions were not present in a patient's records, from an audit standpoint, then a retraction for the week of services would occur. Hicks testified that there was no description of the interventions relating to the client-specific goals within the documentation she reviewed, which was a requirement. Hicks stated that she considered recreation and social skills as part of the twenty-one sessions. However, she could not determine the therapeutic value of activities that fell under the categories of self-soothing/nurturing, hygiene, and manners. According to Hicks, these are basic human requirements and Childhelp did not provide a description for how these activities related to client-specific goals and treatment. In Hicks's expert opinion, where the auditors identified an error code, Childhelp did not comply with DMAS's documentation requirements.

On October 26, 2011, after hearing the testimony, reviewing all the exhibits, and examining the Psychiatric Services Provider Manual, the hearing officer recommended overturning DMAS's determination that Childhelp had been overpaid $1,173,264.06 in Medicaid funding.

On December 22, 2011, DMAS's Director issued the final agency decision in which she declined to adopt the hearing officer's recommendation, citing legal error. Childhelp was ordered to pay DMAS back $1,173,264.06 in Medicaid funding.

Childhelp filed an appeal of the final agency decision with the Circuit Court of the City of Richmond. A hearing was held on July 30, 2014. The circuit court issued its opinion on December 12, 2015 upholding the final agency decision that Childhelp had been overpaid for Medicaid funding because it met the standard set forth in Code § 32.1-325.1(B). This appeal followed.

ANALYSIS

Childhelp argues that the Director of DMAS erred when she did not adopt the hearing officer's recommended decision. We agree.

To address this issue, we must consider Code § 32.1-325.1(B), which provides: "[t]he Director shall adopt the hearing officer's recommended decision unless to do so would be an error of law or Department policy. Any final agency case decision in which the Director rejects a hearing officer's recommended decision shall state with particularity the basis for rejection." In analyzing statutes, the appellate court reviews the issue *de novo*. 1st Stop Health Servs. v. Dep't of Med. Assistance Servs., 63 Va. App. 266, 275, 756 S.E.2d 183, 188 (2014).

In 1st Stop Health Services, this Court found that the Director of DMAS did not err when disagreeing with a hearing officer's determination that a particular form was unnecessary to verify billing records and by disagreeing with the hearing officer's conclusion that a Medicaid provider had borne its burden of proof. 63 Va. App. at 276, 756 S.E.2d at 188. The Court also found that the Director articulated the reasoning behind her decision to reject the hearing officer's recommendation with ample particularity. Id.

In this case, the parties had a formal hearing before a hearing officer on August 4, 2011. After considering all of the relevant evidence, the hearing officer recommended overturning DMAS's retraction of $1,173,264.06 in Medicaid funding. The Director declined to follow the hearing officer's recommendation, found legal error, and told Childhelp they needed to refund the money to DMAS. As in 1st Stop Health Services, the Director here listed reasons in the final agency decision for not following the hearing officer's recommendation. However, unlike in 1st Stop Health Services, the final agency decision was not accomplished with the required level of specificity. See id. In 1st Stop Health Services, appellant was told to have a specific form to verify billing records, but appellant did not do so. Id. This case is not factually similar.

- 7 -

Here, the Director determined that "manners, nurturing, and self-soothing were not identified as interventions because they were not noted in the plans of care as interventions." However, at the hearing Childhelp's witnesses were able to articulate exactly how these activities helped patients and could count toward the twenty-one non-billable sessions. The Director also stated in the final agency decision that: "[a] Provider's statements may not be used to substitute for DMAS documentation." This is generally true, but when sessions are documented in each patient's report and employees can further establish the link between each session and a patient's plan of care, those sessions should be taken into consideration. Looking at the hearing officer's recommendation, he determined that the evidence presented regarding different sessions and patients' plans of care established such a link. The Director of DMAS is authorized to reject the factual findings of the hearing officer that are not based on the hearing officer's express observations of the demeanor of the witnesses. Beverly Health & Rehab. Servs. v. Metcalf, 24 Va. App. 584, 591, 484 S.E.2d 156, 160 (1997). However, the hearing officer is the one that listens to the testimony of the witnesses and makes a determination based on the evidence presented to him. Code § 32.1-325.1(B) provides that the Director should adopt the hearing officer's recommendation unless "to do so would be an error of law or Department policy," showing that the Director should give deference to the hearing officer's recommendation. It is also important to note that in a previous 2008 audit, Childhelp was able to submit supplemental documentation to further explain how it abided by the terms of its agreement with DMAS, and the auditors ultimately found no billing errors. This shows that Childhelp could reasonably assume that they would have the opportunity to explain any issues found by the auditors.

A final agency decision must identify specific reasons why a hearing officer was wrong and how there was no evidentiary support for the recommendation. When Childhelp's employees testified, they were able to tell the hearing officer exactly where the twenty-one

- 8 -

non-billable treatment sessions were listed, how they fit into each patient's plan of care, and how each continued their treatment. To allow the Director of DMAS to disregard the recommendation of the hearing officer simply because she does not agree with his recommendation would undermine the procedural integrity currently in place. The hearing officer is the individual who actually listens to witnesses testify and makes factual determinations. In these particular circumstances, the Director erred by not adopting the hearing officer's recommended decision.

CONCLUSION

For the reasons state above, this Court reverses the decision of the circuit court, and remands the case to be considered on remand consistent with the factual findings of the hearing officer.

Reversed and remanded.